STATE OF LOUISIANA
v.
EDDIE L. NEGRON
No. 2009 KA 1204.
Court of Appeals of Louisiana, First Circuit.
December 23, 2009.
WALTER P. REED SCOTT GARDNER State of Louisiana. Attorneys for Appellee, Covington, LA
KATHRYN W. LANDRY Baton Rouge, LA
HOLLI HERRLE-CASTILLO Eddie L. Negron Marrero, LA Attorney for Defendant/Appellant,
EDDIE L. NEGRON Pro Se Cottonport, LA Defendant/Appellant
Before: WHIPPLE, HUGHES AND WELCH, JJ.
WHIPPLE, J.
The defendant, Eddie Leroy Negron, was charged by bill of information with battery of a correctional facility employee, a violation of LSA-R.S. 14:34.5. The defendant pled not guilty and, following a jury trial, was found guilty as charged. The State filed a multiple offender bill of information and, following a hearing on the matter, the defendant was adjudicated a third-felony habitual offender and was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence under LSA-R.S. 15:529.1(A)(l)(b)(ii). The defendant filed a motion to reconsider sentence. At a hearing on the matter, the trial court granted the motion and reduced the defendant's life sentence to forty years. The State objected to the trial court's ruling. The defendant now appeals, designating two counseled assignments of error and three pro se assignments of error. The State appeals the defendant's reduced sentence. We affirm the conviction, habitual offender adjudication, and sentence.

FACTS
On or about September 28, 2007, Director of Inmate Affairs Lieutenant Gregory Longino, with the St. Tammany Parish Sheriff's Office, conducted a disciplinary appeals hearing regarding the defendant, who was housed as an inmate in the St. Tammany Parish Jail. Based on a prior incident at the jail involving the defendant, the defendant was believed to pose a threat to others on the tier. Accordingly, the purpose of the hearing, wherein the defendant was given the opportunity to be heard, was to determine whether the defendant should be put in isolation. Based on reports by deputies and inmates involved in the prior incident, Lieutenant Longino decided the defendant should be put on indefinite lockdown for an extended period up to 90 days.
Deputy Gregory Perkins, with the St. Tammany Parish Sheriff's Office, attended the defendant's disciplinary hearing. According to Deputy Perkins, the defendant became upset and was displeased with Lieutenant Longino's decision. The defendant was handcuffed and escorted out of the hearing room. At that point, the defendant intentionally fell to the floor and refused to move. Several deputies were called to assist in bringing the defendant back to his cell. The defendant, a large man, placed his hands beneath him making it difficult for the deputies to grab and control him. The defendant became combative and angry and began yelling.
Deputy Charles Gwynn, employed by the St. Tammany Parish Sheriff's Office and assigned to the St. Tammany Parish Jail, was one of the deputies trying to contain the defendant. According to Deputy Gwynn, the deputies managed to get the defendant to his feet. The defendant then dropped again to the ground, refused to move, and informed the deputies that they were going to have to carry him. Deputy Gwynn and the other deputies were instructed by their corporal to pick up the defendant and carry him back to his cell. As he was being carried, the defendant twisted and writhed until the deputies were forced to let him go. The defendant was picked up again and, as he was being carried to his cell, the defendant grabbed onto a gate with both hands and refused to let go. Several deputies attempted to loosen the defendant's grip, to no avail. Deputy Gwynn eventually wrested the defendant's hands from the gate. In the process, Deputy Gwynn and the defendant slammed against a wall, with Deputy Gwynn's arm near the defendant's mouth. At this point, the defendant bit Deputy Gwynn's wrist. The defendant was then subdued and placed in his cell.
Deputy Gwynn reported to the jail medical facility for the bite. Deputy Gwynn did not suffer any broken skin, and no medical treatment was required. No pictures were taken of the injury. According to Lieutenant Longino, there was no video surveillance in the particular corridor where the defendant bit Deputy Gwynn. No one else saw the defendant bite Deputy Gwynn.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant argues the evidence was insufficient to support the conviction of battery of a correctional facility employee. Specifically, the defendant contends the conviction should be set aside because the State did not prove the defendant bit Deputy Gwynn.
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const, amend. XIV; La. Const, art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). See also LSA-C.Cr.P. art. 821(B); State v. Ordodi, XXXX-XXXX, p. 10 (La. 11/29/06), 946 So. 2d 654, 660; State v. Mussall, 523 So. 2d 1305, 1308-09 (La. 1988). The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 2001-2585, pp. 4-5 (La. App. 1st Cir. 6/21/02), 822 So. 2d 141, 144. The testimony of the victim alone is sufficient to prove the elements of the offense. State v. Orgeron, 512 So. 2d 467, 469 (La. App. 1st Cir. 1987), writ denied, 519 So. 2d 113 (La. 1988).
Louisiana Revised Statutes 14:33 defines battery to include the intentional use of force or violence upon the person of another. Louisiana Revised Statutes 14:34.5 provides in pertinent part:
A.(l) Battery of a correctional facility employee is a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a correctional facility employee acting in the performance of his duty.
(2) For purposes of this Section, "correctional facility employee" means any employee of any jail, prison, correctional facility, juvenile institution, temporary holding center, halfway house, or detention facility.
Battery of a correctional facility employee is a general intent, rather than specific intent, crime. The offense requires neither the infliction of serious bodily harm nor the intent to inflict serious injury. Criminal intent may be specific or general. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Proof of specific intent is required where the statutory definition of a crime includes the intent to produce or accomplish some prescribed consequence. The statutory definition of battery of a correctional facility employee does not include the intent to produce or accomplish some prescribed consequence.
General intent requires a showing that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. LSA-R.S. 14:10(2). In general intent crimes, criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal. The criminal intent necessary to sustain a conviction for battery of a correctional facility employee is shown by the very doing of the acts which have been declared criminal in the definition of the crime. State v. Elliot, 2000-2637, pp. 4-5 (La. App. 1st Cir. 6/22/01), 809 So. 2d 203, 205-06.
As established by the trial testimony of Lieutenant Longino and Deputy Perkins, when the defendant was told he would have to return to indefinite lockdown, he became angry, combative, and refused to comply with the commands of the deputies. The defendant is a large, strong man, and his defiant acts required several deputies to ultimately contain him and subdue him.[1] During his struggle with the deputies, the defendant grabbed onto a gate to prevent the deputies from further moving him. Several deputies attempted to pry the defendant's hands from the gate, but to no avail. Deputy Gwynn managed to loosen the defendant's hands, which caused the two to slam into a wall. Deputy Gwynn's right wrist was around the defendant's mouth when they hit the wall. According to Deputy Gwynn, at that point, the defendant bit Deputy Gwynn's wrist. When asked how he knew whether or not the defendant's bite was only accidental contact with his wrist, Deputy Gwynn testified, "Because I had to pull my wrist out of his mouth." Deputy Gwynn also responded that he was confident the defendant had bitten him on purpose.
The defendant contends that the State failed to prove Deputy Gwynn was bitten by the defendant because the only evidence of a bite was the claim by Deputy Gwynn.[2] Further, according to the defendant, there was no physical evidence because there was no bite mark left on Deputy Gwynn, no photographs were taken of the bite mark, and the scuffle was not captured on video. However, the State established through the testimony of Deputy Gwynn, if believed by the jury, that, while performing his duty, the defendant bit him. Based on Deputy Gwynn's testimony, the defendant, by the very doing of the act of biting Deputy Gwynn, had the criminal intent necessary to sustain a conviction for battery of a correctional facility employee. Further, contrary to the defendant's assertions in his brief, the law does not require more, such as pictures of the bite mark or a videotape of the battery. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Thomas, 2005-2210, p. 8 (La. App. 1st Cir. 6/9/06), 938 So. 2d 168, 174, writ denied, 2006-2403 (La. 4/27/07), 955 So. 2d 683.
When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. See State v. Moten, 510 So. 2d 55, 61 (La. App. 1st Cir.), writ denied, 514 So. 2d 126 (La. 1987). The jury's verdict reflected the reasonable conclusion that, based upon the evidence viewed in the light most favorable to the prosecution, the defendant, who was highly combative, resistant, and angry, bit the wrist of Deputy Gwynn as Deputy Gwynn struggled to bring the defendant to his cell. The defendant did not testify and presented no rebuttal testimony. See Moten. 510 So. 2d at 61-62.
The guilty verdict indicates the jury accepted the account of the incident set forth by the State's witnesses. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Taylor, 97-2261, pp. 5-6 (La. App. 1st Cir. 9/25/98), 721 So. 2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342, p. 8 (La. 10/17/00), 772 So. 2d 78, 83.
After a thorough review of the record, we find that the evidence supports the jury's verdict. Viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant, in biting Deputy Gwynn on the wrist, was guilty of battery of a correctional facility employee.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, the defendant argues that his sentence is excessive. Specifically, the defendant contends that his forty-year sentence, after a downward departure from a life sentence by the trial court, is nonetheless so disproportionate to the crime of "a minor bite on the wrist" that it should shock one's sense of justice. We disagree.
When the defendant was sentenced to life imprisonment, he filed a motion to reconsider sentence. The trial court granted his motion and reduced his sentence to forty years. While the defendant is now appealing his forty-year sentence as excessive, he failed to file a new motion to reconsider sentence. However, the State objected to the defendant's reduced sentence at the motion to reconsider sentence hearing and filed a separate appeal. The State argues the trial court, in reducing the defendant's life sentence to a forty-year sentence, misapplied State v. Johnson, 97-1906 (La. 3/4/98), 709 So. 2d 672, which established the defendant's burden in determining whether the trial court properly imposed, under State v. Dorthey, 623 So. 2d 1276 (La. 1993), a sentence less than the minimum sentence. In Dorthey, 623 So. 2d at 1280-81, our supreme court held that, in certain circumstances, a sentence less than the minimum sentence mandated by the Habitual Offender Law might be permitted. Citing State v. King, XXXX-XXXX, pp. 7-8 (La. 10/16/07), 969 So. 2d 1228, 1232, the State argues in its brief:
This defendant's criminal history makes obvious that he is exactly the type of criminal for which the Habitual Offender Law was established. The Louisiana Supreme Court has consistently held that the purpose of the habitual offender law is to deter and punish recidivism. The Court has also long recognized that statutes providing for increased punishment for repeat offenders serve a valid state interest in protecting society by attempting to remove recidivists from its midst.
The defendant fded an appellee brief in response to the State's appeal, arguing that a life sentence is excessive under Johnson. The State filed a reply brief arguing that, since the habitual offender law in its entirety is constitutional, the minimum sentences it imposes upon a defendant with multiple offenses are also presumed to be constitutional.
At the multiple offender hearing, the defendant was adjudicated a thirdfelony habitual offender under LSA-R.S. 15:529.1(A)(l)(b)(ii). The trial court imposed the mandatory life sentence. The defendant filed a motion to reconsider sentence. At the hearing on the motion to reconsider sentence, the defendant argued that under Dorthey, his sentence should be reduced. In reducing the defendant's sentence, the trial court provided the following reasons:
Mr. Negron has a horrible record, no doubt about that. And he is exactly, he is a multiple offender. But the particular crime that he was convicted of I am just of the opinion that that is, you know, that this is a Dorthe[y] situation. I mean he is deserving of a very high sentence but not life in prison. I am going to grant the Motion to Reconsider Life Sentence and I am going to sentence him to 40 years under the habitual offender rule proceeding. Giving him credit for any time served. And notify him he has two years from this date to file any post conviction relief request. Vacate the prior sentence.
* * * * *
I understand what [the State is] doing. You will bring it up, but I just, you know, under Dorthe[y] if something is of such a nature that it shocks and you know, not his record doesn't shock me but for this particular crime it shocks me to give a man life imprisonment. So I am going to vacate and amend it to 40 years.
The Eighth Amendment to the United States Constitution and Article I, section 20, of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So. 2d 762, 767 (La. 1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks one's sense of justice. State v. Andrews, 94-0842, pp. 8-9 (La. App. 1st Cir. 5/5/95), 655 So. 2d 448, 454. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. See State v. Holts, 525 So. 2d 1241, 1245 (La. App. 1st Cir. 1988). On appellate review of a sentence, the relevant question is "`whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'" State v. Thomas, 98-1144, pp. 1-2 (La. 10/9/98), 719 So. 2d 49, 50 (per curiam) (quoting State v. Humphrey, 445 So. 2d 1155, 1165 (La. 1984)).
In Dorthey, 623 So. 2d at 1280-81, the Louisiana Supreme Court opined that if a trial judge were to find that the punishment mandated by LSA-R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounted to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive. In Johnson, 97-1906 at pp. 7-9, 709 So. 2d at 676-77, the Louisiana Supreme Court reexamined the issue of when Dorthey permits a downward departure from the mandatory minimum sentences under the Habitual Offender Law. A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality. A trial judge may not rely solely upon the nonviolent nature of the instant crime or of past crimes as evidence which justifies rebutting the presumption of constitutionality. While the classification of a defendant's instant or prior offenses as nonviolent should not be discounted, this factor has already been taken into account under the Habitual Offender Law for third and fourth offenders. Johnson, 97-1906 at p. 7, 709 So. 2d at 676.
To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, which means that because of particular or unusual circumstances, the defendant is being improperly subjected to the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Given the legislature's constitutional authority to enact statutes such as the Habitual Offender Law, it is not the role of the sentencing court to question the wisdom of the legislature in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates the constitution. Moreover, downward departures from the minimum sentence under the Habitual Offender Law should occur only in rare situations. Johnson, 97-1906 at pp. 8-9, 709 So. 2d at 676-77.
Although this court might have ruled differently if we had been the sentencing court, we are unable to say the trial court abused its discretion in finding the defendant proved by clear and convincing evidence that he is exceptional and/or these particular circumstances are exceptional such that a life sentence would not be meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. See Johnson, 97-1906 at p. 8, 709 So. 2d at 676. Under the circumstances of this case, we find no abuse of discretion by the trial court in its determination that the life sentence was unconstitutionally excessive as applied to the instant circumstances and this defendant. Accordingly, we are unable to say the trial court erred in granting the defendant's motion to reconsider sentence and, under Dorthev, reducing his life sentence to a forty-year sentence.
However, as to the defendant's contention in his counseled brief that the forty-year sentence is excessive, we likewise find no merit. Louisiana Code of Criminal Procedure article 881.1 provides in pertinent part:
A. (1) In felony cases, within thirty days following the imposition of sentence ... the state or the defendant may make or file a motion to reconsider sentence.
* * * * *
C. If a motion is made or filed under Paragraph A of this Article, the trial court may resentence the defendant despite the pendency of an appeal or the commencement of execution of the sentence.
The use of the term "resentence" in LSA-C.Cr.P. art. 881.1 makes it clear that when relief is granted, the result is imposition of a new sentence. Since a new sentence is imposed when relief is granted, the language of Article 881.1 requires that a renewed motion for reconsideration be filed, specifying the grounds for objection to the new sentence. See LSA-C.Cr.P. art. 881.2(A)(1). As such, the defendant was required to file a new motion for reconsideration of sentence in the trial court in order to preserve appellate review of the new sentence. See State v. Smith, XXXX-XXXX, pp. 6-7 (La. App. 1st Cir. 4/7/04), 879 So. 2d 179, 183 (en banc).
A thorough review of the record indicates the defendant's counsel did not make a written or oral motion to reconsider his new, forty-year sentence. Under LSA-C.Cr.P. arts. 881.1(E) and 881.2(A)(1), the failure to make or file a motion to reconsider sentence shall preclude the defendant from raising an objection to the sentence on appeal, including a claim of excessiveness. The defendant, therefore, is procedurally barred from raising this excessiveness argument. See State v. Duncan, 94-1563, p. 2 (La. App. 1st Cir. 12/15/95), 667 So. 2d 1141, 1143 (en banc per curiam). See also State v. LeBouef, 97-0902, pp. 2-3 (La. App. 1 st Cir. 2/20/98), 708 So. 2d 808, 808-09, writ denied, 98-0767 (La. 7/2/98), 724 So. 2d 206.
For the foregoing reasons, we reject the State and the defendant's assignments of error, and affirm the forty-year sentence.

REVIEW FOR ERROR
In his counseled brief, the defendant asks this court to examine the record for error under LSA-C.Cr.P. art. 920(2). This court routinely reviews the record for such errors, whether or not such a request is made by a defendant. Under LSC.Cr.P. art. 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record in these proceedings, notwithstanding the sentencing error addressed in the second assignment of error, we have found no reversible errors. See State v. Price, 2005-2514 (La. App. 1st Cir. 12/28/06), 952 So. 2d 112 (en banc), writ denied, XXXX-XXXX (La. 2/22/08), 976 So. 2d 1277.

PRO SE ASSIGNMENT OF ERROR NO. 1
In his first pro se assignment of error, the defendant argues the trial court erred in determining that battery of a correctional facility employee was a crime of violence. Specifically, the defendant contends that because LSA-R.S. 14:2(B) does not list battery of a correctional facility employee as a "crime of violence," he should not have been sentenced under LSA-R.S. 15:529.l(A)(l)(b)(ii), which imposes a mandatory life sentence.
Louisiana Revised Statutes 15:529.1(A)(l)(b)(ii) provides in pertinent part:
If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), ... or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
At the habitual offender hearing, the trial court found battery of a correctional facility employee to be a crime of violence. The two predicate convictions used to adjudicate the defendant a third-felony habitual offender were aggravated battery, an enumerated "crime of violence" under LSA-R.S. 14:2(B)(5), and burglary of an inhabited dwelling, which carried a maximum sentence of twelve years. Thus, all three felonies fell within the purview of LSA-R.S. 15:529.1(A)(l)(b)(ii).
The defendant contends he was illegally sentenced under LSA-R.S. 15:529. l(A)(l)(b)(ii) because battery of a correctional facility employee is not an enumerated "crime of violence" under LSA-R.S. 14:2(B). Accordingly, the defendant contends the applicable sentencing provision was LSA-R.S. 15:529.1(A)(l)(b)(i), which provides a sentence of imprisonment "for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction."
Louisiana Revised Statutes 14:2(B) provides in pertinent part:
In this Code, "crime of violence" means an offense that has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon.
Louisiana Revised Statutes 14:2(B) provides a list of enumerated "crimes of violence." Battery of a correctional facility employee is not included in this list.
At the habitual offender hearing, the trial court found battery of a correctional facility employee to be a crime of violence. See LSA-C.Cr.R art. 890.1(A). In designating battery of a correctional facility employee a crime of violence, despite its absence from the list of enumerated offenses in LSA-R.S. 14:2(B), the trial court stated in pertinent part:
Then as to the last one, which is a battery on a correctional officer, the definition of crime of violence means an offense that has an element, the use, attempted use, or threatened use of physical force against a person . . . and that, by its very nature, involves a substantial risk that physical force against a person . . . may be used in the course of committing the offense[.] ...
Well clearly, the definition of the crime fits that definition. The fact that there was an enumeration, those offenses would, the Court would only be limited to a particular enumeration if that crime of violence was a definition of such a nature that it was vague or over broad [sic] in any way. And I am of the opinion that the definition in this particular act is just clearly and absolutely within the definition of 14:2 B.
We agree with the trial court. The list of offenses in LSA-R.S. 14:2(B) is illustrative, rather than exclusive. See State v. Hinton, XXXX-XXXX, p. 4 (La. App. 1st Cir. 2/13/09), 6 So. 3d 242, 244. See also Coates v. Day. 2000-2164, pp. 2-3 (La. App. 1st Cir. 12/28/01), 804 So. 2d 893, 894; State v. Fontenot, 2006-226, pp. 2-4 (La. App. 3d Cir. 7/12/06), 934 So. 2d 935, 937-38. A battery is the intentional use of force or violence upon the person of another. LSA-R.S. 14:33. The defendant's act of biting Deputy Gwynn's wrist was clearly an act of physical force against the deputy and, by its very nature, "involve[d] a substantial risk that physical force against the person of another" would be used in the course of committing such a battery. Accordingly, the offense of battery of a correctional facility employee is a "crime of violence" under LSA-R.S. 14:2(B).
This pro se assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. 2
In his second pro se assignment of error, the defendant argues that the trial court's denial of defense counsel's motion for continuance constructively denied him counsel. Specifically, the defendant contends that had defense counsel been able to procure the defendant's medical records prior to trial, defense counsel would have had evidence to establish an insanity defense.
On the day of trial, defense counsel moved for a continuance because, on two occasions less than a week prior to trial, the jail did not transport the defendant, which precluded defense counsel from consulting with him. Also, according to defense counsel, the jail did not respond to a subpoena duces tecum requesting the defendant's medical records.[3] The prosecutor stated that the case was prioritized for trial at their last trial setting. He further informed the trial court that he personally went to the jail to obtain the documents requested by defense counsel in his subpoena duces tecum. The prosecutor noted that he got all of the documents available and made copies of them for defense counsel and the trial court. Regarding any other documents defense counsel was requesting at this point, the prosecutor stated, "I don't know what additional documents that Mr. Talley [defense counsel] is looking for so I don't know how to speak to that." The trial court denied the motion for a continuance, noting that the matter had been set numerous times and was, in fact, a priority last time.
Regarding constructive denial of counsel, the supreme court in State v. Laugand, 99-1327, pp. 1-2 (La. 3/17/00), 759 So. 2d 34, 35 (per curiam) stated:
A judge may not respond to an unexpected disruption of the court's trial schedule, caused by a conflict in defense counsel's own trial schedule which results in counsel's absence on the morning of trial, by denying a motion for a continuance and forcing the defendant to trial without an attorney. . . . Similarly, a trial judge may not constructively deny the defendant his right to counsel by forcing him to trial represented by an attorney who refuses to participate in any manner in the proceedings because he believes he has not had time to prepare an adequate defense, or by an attorney who participates in the proceedings but is completely unprepared to try the case because the court has appointed him as substitute counsel on the morning of trial, (citations omitted).
In support of his position, the defendant cites Laugand, as well as State v. Knight, 611 So. 2d 1381 (La. 1993), and State v. Addison. 94-2745 (La. 6/23/95), 657 So. 2d 974 (per curiam). However, these cases are not dispositive of the instant matter. In Laugand. 99-1327 at p. 2, 759 So. 2d at 36, defense counsel informed the trial court that he was fresh from trial in another parish and that as a result of a scheduling conflict, he had been unable to prepare for trial. In Knight, 611 So. 2d at 1382, counsel who had handled the defendant's case for pre-trial proceedings was on vacation the day of trial. The trial court appointed new counsel for the defendant on the day of trial, despite the new counsel's ignorance of the case. In Addison, 94-2745 at pp. 1-2, 657 So. 2d at 974-75, there was a lastminute substitution of counsel for the defendant. The new counsel, who was not familiar with the case, appeared on the day of trial. Therein, the single instance of the new counsel's involvement with the defendant's case was an appearance by counsel for an unsuccessful bail reduction motion.
In the instant matter, defense counsel made no mention to the trial court about being unprepared for trial. Moreover, as of the day of trial, defense counsel had been representing the defendant for over six months. In his motion for continuance, defense counsel complained of twice not being able to see the defendant, once on October 25, 2008, and again on October 28, 2008, specifically on this date at 9:30 a.m. Trial began on October 29, 2008. During his argument in support of his motion for a continuance, which was also the first day of trial (October 29), defense counsel informed the trial court that the last time he saw the defendant "was in fact last night." The reference to "last night" suggests defense counsel saw the defendant on October 28, the day before trial. Thus, it appears defense counsel was unable to see the defendant on a single instance four days prior to trial.
The defendant suggests in his pro se brief that, had defense counsel been granted the continuance, defense counsel would have been able to obtain the defendant's medical records. With these medical records, according to the defendant, defense counsel "would have been in possession of a treasure trove of evidence to establish an insanity defense."
The defendant does not clearly indicate the medical records to which he is referring. Defense counsel filed a motion for subpoenas duces tecum requesting that the St. Tammany Parish Sheriff's Department produce, among other documents, all medical records of the defendant. At the hearing on the motion for continuance, the prosecutor informed the trial court that he had obtained "from the jail" all the documents that he could get. In the State's supplemental answer to motion for discovery, the prosecutor provided to the defendant a copy of the defendant's jail records from St. Tammany Parish Jail. A review of these records, which have been made a part of the appellate record, reflects that no medical records appear among the hundreds of pages of jail records. Moreover, any argument regarding insanity or an insanity defense is not properly before this court. The defendant entered a plea of "not guilty" in the instant matter. When a defendant is tried upon a plea of "not guilty," evidence of insanity or mental defect at the time of the offense shall not be admissible. LSA-C.Cr.P. art. 651. In pleading not guilty, rather than not guilty and not guilty by reason of insanity, the defense could not have elicited expert opinion testimony regarding the defendant's mental capacity. See State v. Stewart, 93-0708, p. 14 (La. App. 1st Cir. 3/11/94), 633 So. 2d 925, 934, writ denied, 94-0860 (La. 9/16/94), 642 So. 2d 189.
If the defendant is suggesting in his brief that he would have changed his "not guilty" plea to "not guilty and not guilty by reason of insanity" had defense counsel been granted the continuance and obtained his medical records, the defendant has made no showing of this from the record before us. Such an issue is more properly raised by an application for postconviction relief in the district court, where a full evidentiary hearing may be conducted.[4]
The trial court has great discretion in deciding whether to grant a motion for continuance, and this decision will not be disturbed on appeal in the absence of an abuse of that discretion. Even when an abuse of discretion is shown, typically a conviction will not be reversed based on denial of a continuance absent a showing of specific prejudice. State v. Castleberry, 98-1388, p. 5 (La. 4/13/99), 758 So. 2d 749, 755-56, cert, denied, 528 U.S. 893, 120 S. Ct. 220, 145 L. Ed. 2d 185 (1999). See State v. Strickland, 94-0025, p. 23 (La. 11/1/96), 683 So. 2d 218, 229. Based on the foregoing, we find no abuse of discretion in the trial court's denial of defense counsel's motion to continue. Moreover, the defendant has made no showing of specific prejudice.
This assignment of error is also without merit.

PRO SE ASSIGNMENT OF ERROR NO. 3
In his third pro se assignment of error, the defendant notes the State's appeal of the trial court's reduction of his life sentence to a forty-year sentence. The defendant contends the trial court was within its legal authority to reduce his life sentence and impose a forty-year sentence pursuant to Dorthey, and concludes that this court should uphold the forty-year sentence. This issue has already been addressed under the second counseled assignment of error, wherein we have affirmed the new sentence imposed by the trial court.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND FORTY-YEAR SENTENCE AFFIRMED.
NOTES
[1] According to the defendant's St. Tammany Parish Jail records, the defendant is six feet tall and weighs 250 pounds.
[2] The defendant notes in his brief that several incident reports regarding the incident are contained in the record. The incident report by Deputy Ardeneaux, according to the defendant, contradicts Deputy Gwynn's version of events, in that Deputy Ardeneaux was the one who forced the defendant to release his grip. These incident reports in the record referred to by the defendant were not introduced at the trial of this matter and, as such, do not constitute evidence. Deputy Ardeneaux's version of events, having not been considered by the jury, are, therefore, not part of this court's analysis of the sufficiency of the evidence.
[3] The motion for subpoena duces tecum requested that the St. Tammany Parish Sheriffs Department produce all medical records of the defendant, all disciplinary records of the defendant, and all photos and medical records documenting Deputy Gwynn's injuries.
[4] The defendant would have to satisfy the requirements of LSA-C.Cr.P. art. 924, et seq., in order to receive such a hearing.